FILED

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

2017 AUG -4 PM 3: 44

US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

| | |
|---|---|
| ANDREW CHAMBERS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SHINE, INC., a Delaware corporation,<br><br>Defendant. | Case No. 6:17-cv-1449-ORL-31-TBS<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

Plaintiff Andrew Chambers ("Chambers" or "Plaintiff") brings this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendant Shine, Inc. ("Shine" or "Defendant") to stop its practice of sending unsolicited text messages to cellular telephones without the recipient's prior express consent and after those recipients ask that the messages stop, and to obtain redress for all persons injured by its conduct. Plaintiff, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

**NATURE OF THE ACTION**

1. Defendant Shine, Inc. is a communication company that sends its users daily text messages with inspirational and motivational statements.

2. Unfortunately for consumers, Shine casts its marketing net too wide. That is, in an attempt to promote its services, Shine sends repeated, unsolicited text messages to consumers' cellular telephones – without prior express consent and after recipients have expressly requested

1

that the messages cease, all in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA").

### A. Bulk SMS Marketing

3. Bulk text messaging, or SMS marketing, has emerged in recent years as a new and direct method of communicating and soliciting consumer business. The term "Short Message Service" or "SMS" is a messaging system that allows cellular telephone subscribers to use their cellular telephones to send and receive short text messages, usually limited to 160 characters. An SMS message is a text message call directed to a wireless device through the use of the telephone number assigned to the device.

4. When an SMS message call is successfully made, the recipient's cell phone rings, alerting him or her that a call is being received. As cellular telephones are inherently mobile and are frequently carried on their owner's person, calls to cellular telephones, including SMS messages, may be received by the called party virtually anywhere worldwide and instantaneously.

### B. Defendant Transmits Text Messages to Consumers Who Do Not Want Them

5. In sending the text messages at issue, Defendant took no steps to acquire the prior express consent of Plaintiff or the Class Members who received the unsolicited text messages.

6. On information and belief, Defendant made, or had made on its behalf, the same (or substantially the same) text message calls *en masse* to thousands of cellular telephone numbers throughout the United States.

7. In sending the text messages at issue in this Complaint, Defendant utilized an automatic telephone dialing system ("ATDS"). Specifically, the hardware and software used by Defendant (or its agent) has the capacity to store, produce, and dial random or sequential

2

numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse,* in an automated fashion without human intervention. Defendant's ATDS includes features substantially similar to a predictive dialer, inasmuch as it is capable of making numerous text message calls simultaneously (all without human intervention).

8. Defendant was and is aware that these above described text messages were and are being sent without the prior express consent of the text message recipients.

9. Defendant was and is aware that these above described text messages were and are being sent to recipients after the recipients have replied "STOP" and expressly communicated to Shine that they do not want to receive any more messages.

10. By sending the text messages at issue in this Complaint, Defendant caused Plaintiff and the other members of the Classes actual harm and cognizable legal injury. This includes the aggravation, annoyance, nuisance and invasions of privacy that result from the sending and receipt of such text messages, a loss of value realized for the monies consumers paid to their carriers for the receipt of such text messages, and a loss of the use and enjoyment of their phones, including wear and tear to the related data, memory, software, hardware, and battery components, among other harms.

11. In response to Defendant's unlawful conduct, Plaintiff files this class action seeking an injunction requiring Defendant to cease all unsolicited text messaging activities and an award of statutory damages to the members of the Classes under the TCPA (to be paid into a common fund for the benefit of the Class), together with costs and reasonable attorneys' fees.

**PARTIES**

12. Plaintiff Andrew Chambers is a natural person and citizen of the State of Florida. He resides and is domiciled in Orlando, Florida.

13. Defendant Shine, Inc. is a corporation organized and existing under the laws of the State of Delaware with its headquarters located in Brooklyn, New York. Shine conducts business throughout this District, the State of Florida, and the United States.

## JURISDICTION AND VENUE

14. This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which is a federal statute.

15. This Court has personal jurisdiction over Shine because it conducts a significant amount of business in this district, solicits consumers in this district, sent and continues to send unsolicited text messages to persons in this District, and because the unlawful conduct alleged in this Complaint occurred in or was directed to this District.

16. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Shine solicits a significant amount of consumer business within this District and because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District. Venue is additionally proper because Plaintiff resides in this District.

## COMMON FACTUAL ALLEGATIONS

17. Shine is a communications company that sends consumers motivational text messages each day. Shine also offers a selection of goods and services to members of the "Shine Squad," who are consumers that have referred at least ten others to use Defendant's daily text message service.

18. Text messages, like the ones sent in the instant action, are considered calls under the TCPA. *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014, 14115, ¶ 165 (July 3,

2003); *see also Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009) (noting that text messaging is a form of communication used primarily between telephones and is therefore consistent with the definition of a "call").

19. As explained by the Federal Communications Commission ("FCC"), the TCPA requires "*prior express written consent* for all autodialed or prerecorded telemarketing calls to wireless numbers and residential lines." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG No. 02-278, FCC 12-21, 27 FCC Rcd. 1830 ¶ 2 (Feb. 15, 2012).

20. In plain violation of this law, Shine fails to obtain any prior express consent to send text messages described herein to cellular telephone numbers.

21. Shine sent (and continues to send) text messages to consumers that never provided consent to receive such message and to consumers with whom it had no prior dealings or relationship.

22. Further, Shine has sent (and continues to send) text messages to consumers who have replied "STOP" in response to these messages. While the intent of a "STOP" reply could not be any clearer, Shine ignores such requests/revocation of any prior consent and continues to send text messages to unwilling recipients.

23. In sending the text messages at issue in this Complaint, Shine and/or its agent utilized an automatic telephone dialing system. Specifically, the hardware and software used by Shine (or its agent) has the capacity to store, produce, and dial random or sequential numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse*, in an automated fashion without human intervention. Shine's automated dialing equipment includes

features substantially similar to a predictive dialer, inasmuch as it is capable of making numerous calls simultaneously (all without human intervention).

24. Shine knowingly sent (and continues to send) unsolicited telemarketing calls without the prior express consent of the call recipients and knowingly continues to call such consumers after requests to stop. As such, Shine not only invaded the personal privacy of Plaintiff and members of the putative Classes, but also intentionally and repeatedly violated the TCPA.

## FACTS SPECIFIC TO PLAINTIFF

25. Starting in or around March 2017, Plaintiff began receiving a series of text messages from Shine on his cellular telephone

26. Shine sent each text message to contact Plaintiff via the short code phone number 75985.

27. During the period from March 31, 2017, to April 29, 2017, Plaintiff received approximately twenty-five text messages from Shine. Each message read as follows:

> The idea of projecting power can make us puff up our chest (v exhausting). But vulnerability inspires. Lead w the real you today."
>
> Andrew: shne.us/?r=1WjkeZB

28. During this period, Plaintiff tried twice to make the messages stop. He replied "STOP" to 75985 on April 14, 2017 and again on April 17, 2017.

29. Despite his attempts, Plaintiff continued to receive a message from Shine every weekday. After his first "STOP" reply on Friday, April 14, Plaintiff received the same message from 75985 on Monday, April 17 at 8:21 a.m. At 4:14 p.m. on April 17, Plaintiff replied "STOP" for a second time. Nevertheless, Plaintiff received the same text message during the morning of

6

each weekday, and on April 25 he received two messages. Between his reply on April 17, 2017 and the morning of May 4, 2017 Plaintiff received fourteen messages.

30. The link in Shine's automated text message to Plaintiff, shne.us/?r=1WjkeZB, directs the consumer to http://daily.shinetext.com/?r=1WjkeZB.

31. The following is a reproduced screenshot of http://daily.shinetext.com/?r=1WjkeZB:



32. Plaintiff has continued to receive additional messages. Between June 5, 2017 and July 4, 2017, Plaintiff received at least 24 more messages from Shine.

33. Plaintiff has never provided his express prior written consent to Defendant to send text messages to him and never wanted such messages or advertisements.

34. Shine is and was aware that the above-described text messages were and are being

made to consumers like Plaintiff who had not consented to receive them, who have replied "STOP," and who had previously registered their phone numbers with the National Do Not Call Registry.

35. By sending unauthorized text message calls as alleged herein, Defendant has caused consumers actual harm in the form of annoyance, nuisance, and invasion of privacy. In addition, the text messages caused Plaintiff to incur charges and disturbed Plaintiff's use and enjoyment of his phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on Plaintiff's phone. In the present case, a consumer could be subjected to many unsolicited text messages as the Defendant ignores the requirement of prior express written consent and refuses to stop texting even when asked to do so.

36. In order to redress these injuries, Plaintiff, on behalf of himself and the Classes of similarly situated individuals, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited voice and text calls to cellular telephones.

37. On behalf of the Classes, Plaintiff seeks an injunction requiring Defendant to cease all wireless telemarketing activities and an award of statutory damages to the class members, together with costs and reasonable attorneys' fees, to be paid into a common fund for the benefit of the class members.

## CLASS ALLEGATIONS

38. **Class Allegations**: Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3) on behalf of himself and all others similarly situated and seeks certification of the following three classes:

> **No Consent Class**: All persons in the United States who from four years prior to the filing of the initial complaint in this action who (1) Defendant (or a third

person acting on behalf of Defendant) sent at least one text message, (2) to the person's cellular telephone number, and (3) for whom Defendant claims it obtained prior express written consent in the same manner as Defendant claims it supposedly obtained prior express written consent to send automated text messages to the Plaintiff.

**Reply Stop Class**: All persons in the United States who from four years prior to the filing of the initial complaint in this action to the present: (1) were sent one or more text messages from Shine on his/her cellular telephone; (2) for the purpose of marketing Shine's products and/or services; (3) after the person replied to Shine by sending "STOP" or "QUIT" or a similar message.

39. The following individuals are excluded from the Classes:

(1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and its current or former employees, officers and directors; (3) Plaintiff's counsel and Defendant's counsel; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiff anticipates the need to amend the class definitions following appropriate discovery.

40. **Numerosity**: The exact sizes of each of the Classes are unknown and are not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Shine sent autodialed text messages to thousands of consumers who fall into the definitions of the Classes. Members of the Classes can be easily identified through Defendant's records.

41. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions are central to the case and predominate over any questions that Shine may claim affect individual members of the

9

Classes. Common questions for the Classes include, but are not necessarily limited to the following:

    (a)    Whether Shine's text messages violated the TCPA;

    (b)    Whether Shine utilized an automatic telephone dialing system to send text messages to members of the Classes;

    (c)    Whether Shine obtained prior express written consent to send text messages any class members;

    (d)    Whether Shine systematically sent text messages after specifically being asked not to send such messages by consumers; and

    (e)    Whether members of the Classes are entitled to treble damages based on the willfulness of Shine's conduct.

42. **Typicality**: Plaintiff's claims are typical of the claims of the other members of the Classes. Plaintiff and the Classes sustained damages as a result of Shine's uniform wrongful conduct during transactions with Plaintiff and the Classes.

43. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in complex class actions. Plaintiff has no interests antagonistic to those of the Classes, and Shine has no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff nor her counsel has any interest adverse to the Classes.

44. **Appropriateness**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform injunctive and declaratory relief to ensure compatible standards of conduct toward the members of the Classes and making final

class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as a whole, not on facts or law applicable only to Plaintiff. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

## FIRST CAUSE OF ACTION
### Violation of the TCPA, 47 U.S.C. § 227, *et seq.*
### (On behalf of the Plaintiff and the No Consent Class)

45. Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

46. Shine sent autodialed text messages to cellular telephone numbers belonging to Plaintiff and other members of the No Consent Class without first obtaining prior express consent to receive such autodialed text messages.

47. Shine sent the autodialed text messages using equipment that had the capacity to store or produce telephone numbers using a random or sequential number generator, to receive and store lists of phone numbers, and to dial such numbers, *en masse*, without human intervention. The telephone dialing equipment utilized by Defendant, similar to a predictive dialer, dialed numbers from a list, or dialed numbers from a database of telephone numbers, in an

automatic and systematic manner. Defendant's autodialer disseminated information *en masse* to Plaintiff and other consumers without human intervention.

48. By sending the unsolicited text messages to Plaintiff and the cellular telephones of members of the No Consent Class without their prior express written consent, and by utilizing an automatic telephone dialing system to make those calls, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii).

49. As a result of Shine's unlawful conduct, Plaintiff and the members of the Classes suffered actual damages in the form of monies paid to receive the unsolicited text messages on their cellular phones and, under Section 227(b)(3)(B), are each entitled to, *inter alia*, a minimum of $500 in damages for each such violation of the TCPA.

50. In the event that the Court determines that Defendant's conduct was willful and knowing, it may, under 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the No Consent Class.

### SECOND CAUSE OF ACTION
**Violation of the TCPA, 47 U.S.C. § 227, *et seq.*
(On behalf of Plaintiff and the Reply Stop Class)**

51. Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

52. Defendant made unsolicited and unwanted telemarketing text message calls to telephone numbers belonging to Plaintiff and the other members of the Reply Stop Class on their cellular telephone *after* the person had informed Defendant that s/he no longer wished to receive such messages from Defendant.

53. Defendant made the text message calls using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator,

and/or receive and store lists of phone numbers, and to dial such numbers, *en masse.*

54. By making unsolicited text message calls to Plaintiff and members of the Reply Stop Class's cellular telephones after they requested to no longer receive calls, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii) by continuing to send messages to them without prior express consent.

55. As a result of Defendant's unlawful conduct, Plaintiff and the members of the Reply Stop Class suffered actual damages in the form of monies paid to receive the unsolicited text message calls on their cellular telephones and, under Section 227(b)(3)(B), are each entitled to, inter alia, a minimum of $500 in damages for each such violation of the TCPA.

56. Should the Court determine that Defendant's conduct was willful and knowing, the Court may, pursuant to Section 227(b)(3), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Reply Stop Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Andrew Chambers, individually and on behalf of the Classes, prays for the following relief:

1. An order certifying the Classes as defined above, appointing Plaintiff Andrew Chambers as the representative of the Classes and appointing his counsel as Class Counsel;

2. An award of actual and statutory damages to be paid into a common fund for the benefit of Plaintiff and the Class Members;

3. An injunction requiring Shine and its agents to cease all unsolicited text messaging activities, and otherwise protecting the interests of the Classes;

4. An award of reasonable attorneys' fees and costs to be paid out of the common fund prayed for above; and

5. Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully Submitted,

**ANDREW CHAMBERS**, individually and on behalf of all others similarly situated,

Dated: 8/1/17

/s/
One of Plaintiff's Attorneys

Ryan S. Shipp, Esq.
814 W. Lantana Rd. Suite 1,
Lantana, Florida 33462
(561) 699-0399
Email: Ryan@shipplawoffice.com

Steven L. Woodrow*
swoodrow@woodrowpeluso.com
Patrick H. Peluso*
ppeluso@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
(720) 213-0675

*Pro hac vice admission to be sought

14