## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | |
|---|---|
| ANDREW CHAMBERS, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>            v.<br><br>SHINE, INC., a Delaware corporation,<br><br>      Defendant. | Civil Action No.6:17-cv-1449<br><br><br><br>(Document Electronically Filed) |

## DEFENDANT SHINE, INC.'S MOTION TO DISMISS AND TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO TRANSFER VENUE

Defendant, Shine, Inc. ("Shine"), by its undersigned counsel and pursuant to Fed. R. Civ. P. 12(b)(1), moves the Court for entry of an order dismissing the Complaint and compelling plaintiff to arbitrate his individual claim against Shine pursuant to Section 4 of the Federal Arbitration Act. Alternatively, if the Court will not compel arbitration, pursuant to 28 U.S.C. § 1404(a), Shine moves to transfer the action against it to the United States District Court for the Eastern District of New York.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 3.01(j), defendant Shine, Inc. hereby requests oral argument. Shine estimates that 30 minutes – 15 per side – will be sufficient time for argument.

## MEMORANDUM

In March 2017, plaintiff Andrew Chambers visited Shine's website and signed up to receive (free) inspirational text messages from Shine. To do so, plaintiff entered his first name, phone number, and email address, and clicked a box which read "GET SHINE TEXTS." Directly below that box, it read "Signing up means you agree to our Terms of

Service & Privacy Policy and to receive our daily message," which were then available via hyperlink. Under a section titled "**Arbitration,**" those Terms of Service confirmed plaintiff's agreement that he would submit "any claim, dispute, or controversy" he had "with Shine" to mandatory binding arbitration pursuant to the rules of the American Arbitration Association.

Instead of respecting that agreement, however, plaintiff filed this Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), action against Shine in district court seeking civil penalties for text messages received on his cellular phone. Shine therefore moves this Court to dismiss this action against it and to compel plaintiff to arbitrate his claim against Shine. The Supreme Court has instructed that the Federal Arbitration Act requires federal courts to compel arbitration where, as here, the plaintiff entered into a prior agreement to arbitrate his claims -- a requirement unchanged by the fact that the plaintiff purports to sue on behalf of a putative class. *See AT&T Mobility, LLC v. Concepcion*, 131 S. Ct. 1740, 1748 (2011); *Am. Exp. Co. v. Italian Colors Rest.*, 133 S. Ct. 2304 (2013). This Court must follow *Concepcion* and *Italian Colors* by enforcing the arbitration clause and dismissing plaintiff's claim against Shine in favor of an arbitral forum.

Plaintiff may not avoid dismissal by arguing that the arbitration provision does not extend to his TCPA claim. As the Eleventh Circuit has twice held, where parties incorporate the rules of the American Arbitration Association into their arbitration agreement they agree to submit any dispute over the scope of that agreement to the arbitrator for decision. *Terminix Int'l. Co. v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332 (11th Cir. 2005); *U.S. Nutraceuticals, LLC v. Cyanotech Corp.*, 769 F.3d 1308, 1311 (11th Cir. 2014). That is

exactly the case here, and this Court must follow that precedent.  Nor would such a defense to this motion be well-founded in any event.  The arbitration provision encompasses "any claim, dispute, or controversy . . . arising out of or in connection with or relating to these Terms."  Such language is certainly broad enough to include a claim that Shine sent plaintiff an unwanted text.

In the alternative, if the Court does not order plaintiff to arbitrate his claims, then it should transfer this action against Shine to the Eastern District of New York.  The Terms of Service contain a forum selection clause directing that "[a]ny dispute arising under these Conditions shall be resolved exclusively by the state and/or federal courts of the State of New York."  Supreme Court precedent mandates enforcement of such forum-selection provisions through an order of transfer issued pursuant to 28 U.S.C. § 1404(a), absent exceptional circumstances not present here.  *Atl. Marine Constr. Co. v. United States District Court*, 134 S.Ct. 568, 581 (2013).  In the alternative, the action should be transferred to New York on forum *non conveniens* grounds – all of the witnesses and documents are located in New York in this putative nationwide class action; Florida has no connection to this suit, except for the named plaintiff's residence; and public interest factors do not present any reason that Florida should be the chosen forum.

## STATEMENT OF FACTS

Shine is a start-up company that provides a completely *free* daily affirmation and motivational text messaging service to its users.  Indeed, Shine is not in the business of selling *anything* but rather is focused on social impact. Shine's principal place of business is

located in New York, New York.  Shine does not have an office in Florida.  *See* Declaration of Marah Lidey ("Lidey Decl."), ¶¶ 1-4.

      To sign up for Shine's motivational texting service, the user must enter his or her first name, telephone number, and email address at www.shinetext.com.  As part of the sign-up process, the user represents that he or she "agree[s] to [Shine's] Terms of Service & Privacy Policy and to receive our daily message."  As shown below, the Terms of Service are hyperlinked directly below the sign-up screen.



Lidey Decl., Ex. A.

**A.      Plaintiff Accepts Shine's Terms of Service in March 2017.**

According to the Shine account database maintained in the regular course of its business, the plaintiff in this action, Andrew Chambers, signed up to receive text messages from Shine on March 31, 2017.  *Id.*, ¶¶ 9.[1]  Plaintiff entered his first name, telephone number, and email address, and then clicked a box that stated:  "GET SHINE TEXTS."  *Id.* By clicking this box, plaintiff agreed to Shine's Terms of Service, which document was immediately available to plaintiff by a hyperlink.  *Id.*  Links to the Terms of Service also appeared on many other pages of www.shinetext.com.  *Id.*, ¶ 5.  The Terms of Service themselves further explained that the user would be bound by these terms if he or she signed up for the text messaging service: "Your use of the Service constitutes your agreement to these Terms and Conditions," *Id.*, Exhibit B, ¶ 2, and "BY ACCESSING ANY PAGE ON THIS SITE, YOU AGREE TO BE BOUND BY THE CURRENT VERSION OF OUR TERMS OF SERVICE AND PRIVACY POLICY."  *Id.*, Exhibit B.

The Terms of Service contain several provisions that are pertinent to the present motion.  First, in a section conspicuously entitled "**Arbitration**," the Terms of Service provide that:

---

[1] As co-founder and co-CEO of Shine, Inc., Ms. Lidey has personal knowledge of how the Shine website appeared and operated in March 2017 and she can authenticate the Terms of Service and Privacy Policy from her personal knowledge.  *See generally* Lidey Decl.  *See In re Homestore.com, Inc. Sec. Litig.*, 347 F.Supp.2d 769, 782-83 (C.D. Cal. 2004) (to authenticate printouts from a website, "some statement or affidavit from someone with knowledge is required; for example, [the] web master or someone else with personal knowledge would be sufficient").

For any dispute you have with Shine, you agree to first contact us at help@shinetext.com and attempt to resolve the dispute with us informally. If Shine has not been able to resolve the dispute with you informally, we each agree to resolve any claim, dispute, or controversy (excluding claims for injunctive or other equitable relief) arising out of or in connection with or relating to these Terms by binding arbitration by the American Arbitration Association ("AAA") under the Commercial Arbitration Rules and Supplementary Procedures for Consumer Related Disputes then in effect for the AAA, except as provided herein.

\*\*\*

ALL CLAIMS MUST BE BROUGHT IN THE PARTIES' INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING, AND, UNLESS WE AGREE OTHERWISE, THE ARBITRATOR MAY NOT CONSOLIDATE MORE THAN ONE PERSON'S CLAIMS. YOU AGREE THAT, BY ENTERING INTO THESE TERMS, YOU AND SHINE ARE EACH WAIVING THE RIGHT TO A TRIAL BY JURY OR TO PARTICIPATE IN A CLASS ACTION.

*Id.*, ¶ 6, Exhibit B at ¶ 19.  The Terms of Service also contain a forum selection clause providing that litigation must be brought in the state or federal courts of New York:

Any dispute arising under these Conditions shall be resolved exclusively by the state and/or federal courts of the State of New York. Shine's performance of these Terms of Service is subject to existing laws and legal process, and nothing contained in this these Terms of Service is in derogation of Shine's right to comply with law enforcement requests or requirements.

*Id.*, ¶ 7, Exhibit B at ¶ 21.

**B.      Plaintiff Filed the Present Action in Derogation of the Arbitration and Forum Selection Provisions.**

On August 4, 2017, plaintiff commenced this action pursuant to the TCPA, on behalf of himself and a putative class of all others similarly situated.  *See* Complaint ("Compl.") The Complaint alleges that "in or around March 2017, Plaintiff began receiving a series of text messages from Shine on his cellular phone."  *Id.* at ¶ 25. According to the Complaint, plaintiff received "approximately twenty-five text messages from Shine" between March 31 and April 29, 2017. *Id.* at ¶ 27.  The Complaint alleges plaintiff "tried twice to make the messages stop," but that he continued to receive text messages thereafter.  *Id.* at ¶¶ 28-32.

While Shine does not dispute plaintiff's allegations *for purposes of this motion*, Shine has dispositive defenses to plaintiff's claims arising from prior consent.  *See* 47 C.F.R. § 64.1200(a)(1) ("No person or entity may: (1) Except as provided in paragraph (a)(2) of this section, initiate any telephone call (other than a call made for emergency purposes or is *made with the prior express consent of the called party*) using an automatic telephone dialing system or an artificial or prerecorded voice").  Specifically, consent is established by plaintiff's creation of a Shine account; his acceptance of the Terms of Service and the Privacy Policy; and Shine's record of his sign-up, including his name, phone number, email address, IP address, and exact date and time of sign-up.

### STANDARD FOR A MOTION TO COMPEL ARBITRATION

The Supreme Court has instructed the lower federal courts that the Federal Arbitration Act ("FAA") requires them to enforce arbitration clauses in customer agreements, and arbitration may not be avoided simply because the plaintiff purports to sue on behalf of a putative class.  The Supreme Court has made clear that the "'principal purpose' of the FAA

is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'" *Concepcion*, 131 S. Ct. at 1748 (internal citations omitted).  In *Italian Colors*, the Court held that arbitration clauses must be enforced even when the modest nature of the named plaintiff's individual claim would render it uneconomical to prosecute the action without the aggregation of damages through a class action.   133 S. Ct. at 2310-11.   Following *Concepcion* and *Italian Colors*, it is now accepted law that a class action plaintiff must be compelled to an individual arbitration if that plaintiff consented to an arbitration provision.[2]

Congress passed the FAA to "revers[e] centuries of judicial hostility to arbitration agreements" and "place arbitration agreements upon the same footing as other contracts." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 510-11 (1974).  The FAA requires the federal courts to "rigorously enforce agreements to arbitrate."  *Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. MedPartners, Inc.*, 312 F.3d 1349, 1357-58 (11th Cir. 2002), *abrogated on other grounds by Ray Haluch Gravel Co. v. Cent. Pension Fund of Int'l Union of Operating Eng'rs & Participating Emp'rs*, 134 S. Ct. 773 (2014) (internal quotations omitted).

Accordingly, on a motion to compel arbitration a district court must consider only whether: (1) "a valid written agreement to arbitrate exists; (2) . . . an arbitrable issue exists; and (3) . . . the right to arbitrate was waived."  *Florida Farm Bureau Ins. Cos. v. Pulte Home Corp.*, No. 8:04–cv–2357, 2005 WL 1345779, at *3 (M.D. Fla. June 6, 2005).  The party resisting arbitration bears the burden of showing that the arbitration agreement is invalid or

---

[2]   *See, e.g., Pendergast v. Sprint Nextel Corp.*, 691 F.3d 1224 (11th Cir. 2012) (enforcing arbitration provision and class waiver by compelling arbitration and dismissing class claims); *Kaspers v. Comcast Corp*., No. 15-12066, 2015 WL 7145318, at *5 (11th Cir. Nov. 16, 2015) (same).

does not encompass the claims at issue.  *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000); *accord Stone v. E.F. Hutton & Co., Inc.*, 898 F.2d 1542, 1543 (11th Cir. 1990) (stressing that a party opposing the enforcement of an arbitration clause "bears a heavy burden of proof" given federal policy favoring arbitration).

<u>**ARGUMENT**</u>

**I.      THE COURT MUST DISMISS SHINE FROM THIS ACTION AND COMPEL PLAINTIFF TO SUBMIT HIS INDIVIDUAL CLAIM AGAINST SHINE TO ARBITRATION.**

Plaintiff agreed to submit "any claim, dispute, or controversy" "arising out of or in connection with or relating to these Terms" to final and binding arbitration.  He further agreed that "ALL CLAIMS MUST BE BROUGHT IN THE PARTIES' INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER," and that "BY ENTERING INTO THESE TERMS, YOU AND SHINE ARE EACH WAIVING THE RIGHT TO A TRIAL BY JURY OR TO PARTICIPATE IN A CLASS ACTION."  Lidey Decl., ¶¶ 5 & 6.  Accordingly, this action should be dismissed for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1) in favor the arbitral remedy agreed to by plaintiff.[3]

**A.      Plaintiff Agreed to Arbitrate His Claims Against Shine.**

Where, as here, a sign-up screen clearly states "Signing up means you agree to our <u>Terms of Service</u> & <u>Privacy Policy</u>," and the user proceeds to sign up, the user accepts those terms and forms a valid and binding contract.  This kind of contractual acceptance is commonly referred to as a "clickwrap" agreement.

---

[3]  In the Eleventh Circuit, "[m]otions to compel arbitration are treated generally as motions to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1)."  *Bell v. Atl. Trucking Co.*, No. 3:09-CV-406-J32MCR, 2009 WL 4730564, at *2 (M.D. Fla. Dec. 7, 2009), *aff'd*, 405 Fed. Appx. 370 (11th Cir. 2010).

Federal courts around the country have enforced clickwrap agreements where the user is required to affirmatively acknowledge a website's terms and conditions by clicking his or her agreement. *See, e.g., Treiber & Straub, Inc. v. UPS*, 474 F.3d 379, 385 (7th Cir. 2007) (finding a clickwrap process to have "provided adequate notice" to customers when it required clicking assent to the terms of use and referring to the contract available on the defendant's website); *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1257 (10th Cir. 2012) (same). Courts have consistently held that a clickwrap agreement, such as the one plaintiff agreed to in 2017, constitutes a binding agreement "where the user is provided with an opportunity to review the terms of service in the form of a hyperlink immediately under the 'I Accept' button and clicks that button." *Crawford v. Beachbody, LLC*, No. 14-cv-1583, 2014 WL 6606563, *1, *3 (S.D. Cal. Nov. 5, 2014) (citing *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 22 n. 4 (2d Cir. 2002)); *see also Swift v. Zynga Game Network, Inc.*, 805 F. Supp.2d 904, 911–12 (N.D. Cal. 2011); *Fteja v. Facebook, Inc.*, 841 F. Supp.2d 829 (S.D.N.Y. 2012) (binding contract found where the following sentence appeared below the "Sign Up" button: "By clicking Sign Up, you are indicating that you have read and agree to the Terms of Service"); *Newell Rubbermaid Inc. v. Storm*, No. CV 9398–VCN, 2014 WL 1266827, at *2 (Del. Ch. Mar. 27, 2014) (same); *Burcham v. Expedia, Inc.*, No. 4:07CV1963 CDP, 2009 WL 586513, at *1, 3 (E.D. Mo. Mar. 6, 2009) (same). *Cf. Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171 (9th Cir. 2014) (declining to enforce a "browsewrap" agreement, where the user was <u>not</u> required to click "I agree" or otherwise manifest consent, but observing that "clickwrap" agreements where the user clicks "I agree" are enforceable).

Here, plaintiff agreed to a clickwrap agreement that is plainly enforceable.  The Lidey Declaration submitted by Shine establishes that plaintiff clicked "GET SHINE TEXTS" and thereby assented to the language directly below which read: "Signing up means you agree to our Terms of Service & Privacy Policy."  Lidey Decl., ¶ 9.  "[C]ourts have enforced 'click-wrap' agreements where a business shows that, as a technical matter, assent 'is required through the registration process.'"  *Sandler v. iStockphoto LP*, No. 2:15-CV-03659-SVW-JEM, 2016 WL 871626, at *2 (C.D. Cal. Feb. 5, 2016)  (internal citations omitted); *see also Zaltz v. JDATE*, 952 F. Supp. 2d 439, 451 (E.D.N.Y. 2013) ("[P]laintiff could not have become a member of JDate.com without first agreeing to the website's Terms of Service, which included the forum selection clause."); *Feldman v. Google, Inc.*, 513 F. Supp. 2d 229, 237 (E.D. Pa. 2007) ("the user here had to take affirmative action and click the 'Yes, I agree to the above terms and conditions' button in order to proceed to the next step," otherwise "he could not have activated his account. . . ").

Plaintiff's choice to bind himself to the Terms of Service could not be more clear, because he affirmed that by "[s]igning up" he "agree[d]" to Shine's "Terms of Service," which were immediately available below the sign-up button through a hyperlink.  *Contrast Sgouros v. Transunion Corp.*, --- F.3d ---, 2016 WL 1169411 (7th Cir. March 25, 2016) (declining to enforce online agreement where acceptance page "says nothing about contractual terms"; where the alleged agreement "was not labeled 'Terms of Use' or 'Purchase' or "Service Agreement,' but was rather just titled a 'Printable Version'"; and where the checked box indicated the consumer's consent for the defendant to obtain access to personal information, not acceptance of a contract).  Accordingly, plaintiff agreed to arbitrate

-11-

"any claim, dispute, or controversy" "arising out of or in connection with or relating to these Terms," and under the law cited above this Court must dismiss this action and compel plaintiff to arbitrate his claims.

> **B.    An Arbitrable Issue Exists: The Parties Clearly and Unmistakably Agreed to Submit Any Dispute Regarding the Scope of the Arbitration Agreement to the Arbitrator for Decision and, in Any Event, the Arbitration Provision Covers Plaintiff's TCPA Claim.**

An arbitrable issue exists here and, in any event, any dispute as to whether the arbitration agreement covers plaintiff's TCPA claim must be submitted to the arbitrator to decide because the parties expressly incorporated the rules of the American Arbitration Association ("AAA").  The Terms of Service provided that "binding arbitration" shall take place by "the American Arbitration Association ("AAA") under the Commercial Arbitration Rules and Supplementary Procedures for Consumer Related Disputes."  Lidey Decl., Ex. B at ¶ 19.  Those rules, in turn, invest the arbitrator with the jurisdiction to determine "any objections . . . with respect to the . . . scope . . . of the arbitration agreement."  Commercial Rules of the American Arbitration Association, R-7 (2016).  It is well-settled that parties who expressly incorporate such rules thereby "clearly and unmistakably" provided that the arbitrator would decide any issue of arbitrarily.  *AT&T Tech., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649, 106 S.Ct. 1415, 1418 (1986).

The Eleventh Circuit has twice held that when parties incorporate the AAA arbitration rules into their agreement, they "clearly and unmistakably agree[ ] that the arbitrator should decide whether the arbitration clause [applies]."  *Terminix Int'l Co. v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332 (11th Cir. 2005).  In *U.S. Nutraceuticals, LLC v. Cyanotech Corp.*, 769 F.3d 1308, 1311 (11th Cir. 2014), the Eleventh Circuit

reversed the district court's denial of the defendant's motion to compel arbitration where the plaintiff argued that the parties' arbitration agreement did not encompass disputes relating to a breach of a confidentiality provision:

> When the parties incorporated into the . . . contract the rules of the [American Arbitration] Association, they clearly and unmistakably contracted to submit questions of arbitrability to an arbitrator. And here, it cannot be "said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers" this dispute.

*Id.* at 1311 (citing *Terminix*, 432 F.3d at 1331, and quoting *AT&T Tech.*, 475 U.S. at 650).

Accordingly, district courts have consistently compelled arbitration even where the plaintiff claimed that the arbitration provision did not encompass the dispute provided that the provision incorporates the AAA rules. Indeed, in many of these decisions the plaintiff claimed that a TCPA class action lay outside the arbitration provision's scope. *See, e.g.*, *Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. MedPartners, Inc.*, 203 F.R.D. 677, 685 (S.D. Fla. 2001) (holding that an agreement's incorporation by reference of the AAA rules "provide[s] clear and unmistakable evidence that the parties agreed to arbitrate arbitrability"), *aff'd on other grounds*, 312 F.3d 1349 (11th Cir. 2002); *Shea v. BBVA Compass Bancshares, Inc.*, No. 1:12-CV-23324-KMM, 2013 WL 869526, at *4 (S.D. Fla. Mar. 7, 2013) (finding that where parties had incorporated AAA and JAMS rules into their arbitration agreement, a plaintiff's challenge to the arbitrability of his TCPA claim should be addressed by an arbitrator and not the court); *24 Go Wireless, Inc. v. AT & T Mobility II, LLC*, No. 11–CV–20930, 2011 WL 2607099, at *2 (S.D. Fla. 2011) (stating that "the parties clearly and unmistakably agreed to submit [the issue of arbitrability] to arbitration . . . by expressly incorporating the rules of the American Arbitration Association

into the arbitration provision of their Agreement" and therefore "any argument that the Plaintiff's TCPA claim is not arbitrable and outside of the scope of the Arbitration Provision must be presented to the arbitrator"); *Contec Corp. v. Remote Solution, Co.*, 398 F.3d 205, 208 (2d Cir. 2005) ("[W]hen ... parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator").

As *Terminix*, *U.S. Nutraceuticals*, and their progeny makes clear, by incorporating the AAA rules into their arbitration agreement plaintiff and Shine agreed to submit any dispute as to scope of that agreement to the arbitrator to decide. Accordingly, plaintiff cannot escape arbitration by asserting that the arbitration provision in the Terms of Service does not cover his TCPA action.

Moreover, the arbitration agreement is more than "susceptible" to an interpretation that covers plaintiff's TCPA claim. *U.S. Nutraceuticals*, 769 F.3d at 1311. In fact, plaintiff's claim for receiving unsolicited text messages from Shine falls within the clear scope of the arbitration provision. The Terms of Service provided that "*any claim, dispute, or controversy* . . . arising out of *or* in connection with *or* relating to these Terms*," shall be resolved "by binding arbitration." Lidey Decl., Exhibit B at ¶ 19. (emphasis added). A claim that Shine sent plaintiff unauthorized text messages certainly qualifies as "any claim, dispute, or controversy" "arising out of" or "in connection with" or "relating to" the Terms of Service. Likewise, Shine would find dispositive defenses to plaintiff's TCPA claim on the basis of the prior express consent it obtained when plaintiff signed up to receive text messages from Shine. Plaintiff's TCPA claim falls within the scope of the arbitration

provision for this reason as well.  *Accord Shea v. BBVA Compass Bancshares, Inc.*, No. 1:12-CV-23324-KMM, 2013 WL 869526, at *5 (S.D. Fla. Mar. 7, 2013) (compelling arbitration of a TCPA claim where plaintiff's receipt of text messages "clearly arises from the Parties' contractual relationship" pursuant to an arbitration provision in a banking application, and "Defendant alleges that it had prior consent to send a text message to Plaintiff concerning the update to its banking application since Plaintiff previously signed up for online banking services on his cellular phone through use of its banking application").[4]

### C.     Shine Did Not Waive its Rights Under the Arbitration Agreement.

Finally, there is no allegation, and certainly no facts to suggest, that Shine waived its right to arbitrate this dispute.  A party's contractual right to arbitrate may be waived by actively participating in a lawsuit or taking action inconsistent with that right.  *Garcia v. Wachovia Corp.*, 699 F.3d 1273, 1277 (11th Cir. 2012).  Shine has done neither; it has not answered the Complaint nor sought any determination by the court on the merits.  In fact, Shine has done nothing substantive in this lawsuit, save for filing this motion.  Accordingly, there are no grounds for a finding of waiver.

## II.     IN THE ALTERNATIVE, THE COURT SHOULD TRANSFER THIS ACTION TO THE EASTERN DISTRICT OF NEW YORK PURSUANT TO 28 U.S.C. § 1404(a).

As explained above, the Court should dismiss this action in favor of an arbital forum. Should it not do so, Shine respectfully requests that the Court transfer the action to the exclusive forum chosen by the parties: the Eastern District of New York, where Shine has its

---

[4]  Likewise, any dispute over the applicability of the class action waiver must be submitted to the arbitrator. *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 453, 123 S. Ct. 2402, 2407, 156 L. Ed. 2d 414 (2003) (the availability of classwide arbitration is "a question of contract interpretation and arbitration procedures" for the arbitrator to decide).

principal place of business.  This result is required by the forum selection clause in the Terms of Service.

### A.    The Forum Selection Clause is Valid and Enforceable.

Forum-selection clauses may be enforced by motion practice pursuant to 28 U.S.C. § 1404(a), which provides that:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division *to which all parties have consented.*

(Emphasis added).

In *Atlantic Marine Construction Co. v. United States District Court*, ___ U.S. ____, 134 S. Ct. 568, 581, 187 L.Ed.2d 487, 500 (2013), the Supreme Court held that "[w]hen the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause."  Indeed, the Court held that it is only under "extraordinary circumstances" and in "the most exceptional cases" that a court may deny a § 1404(a) transfer motion filed to enforce a forum-selection clause.  *Id.*; *accord Krenkel v. Kerzner Int'l Hotels Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009) (holding forum-selection clauses are presumptively valid); *Pappas v. Kerzner Int'l Bahamas Ltd.*, 585 F. App'x 962, 966 (11th Cir. 2014) (enforcing forum selection clause in an online terms and conditions where the plaintiffs had "clicked a box" indicating their acknowledgement and agreement).  In *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15, 92 S. Ct. 1907, 1916 (1972), the Supreme Court held that the party challenging the clause bears a "heavy burden of proof" and must "clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching."  *Id.* at 15, 17; *see also In re*

-16-

*Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989) (holding that by attempting to enforce a forum selection clause, a defendant is actually "trying to enforce the forum that the plaintiff had already chosen: the contractual venue").

"[T]he presence of a valid forum-selection clause requires district courts to adjust their usual § 1404(a) analysis in three ways." *Atl. Marine*, 134 S.Ct. at 581. "First, the plaintiff's choice of forum merits no weight. Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.* "Second, a court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interest. . . . As a consequence, a district court may consider arguments about public-interest factors only." *Id.* at 582. That said, however, the Court also held that public-interest factors will "rarely defeat a transfer motion, [and] the practical result is that forum-selection clauses should control except in unusual cases." *Id.* "Third, when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules. . . ." *Id.*

Accordingly, a forum selection clause may be disregarded only where the plaintiff makes a "clear showing" that the clause is "unreasonable under the circumstances." *M/S Bremen*, 407 U.S. at 10. A forum selection clause is unreasonable if (1) the inclusion of the clause in the agreement was the product of fraud or overreaching; (2) the party wishing to repudiate the clause would effectively be deprived of his day in court were the clause enforced; (3) its choice of law would deprive plaintiff of its remedy; and (4) its enforcement

would contravene public policy.   *Krenkel*, 579 F.3d at 1281; *M/S Bremen*, 407 U.S. at 12-13, 15, 18.

**B.     Plaintiff's TCPA Claim Falls Within the Scope of the Forum Selection Clause Applicable Here.**

"Beyond validity, in analyzing the application of a forum-selection clause a court must determine whether the claim or relationship at issue falls within the scope of the clause—by looking to the language of the clause itself—and whether the clause is mandatory or permissive." *Blue Ocean Corals, LLC v. Phoenix Kiosk, Inc.*, No. 14-CIV-61550, 2014 WL 4681006, at *4 (S.D. Fla. Sept. 19, 2014).

This matter satisfies both requirements.  The forum selection clause in the Terms of Service uses mandatory language specifying that actions "shall be resolved exclusively by the state and/or federal courts of the State of New York."  Lidey Decl., Exhibit B at ¶ 21.  *See Global Satellite Commc'n Co. v. Starmill U.K. Ltd.,* 378 F.3d 1269, 1272 (11th Cir. 2004) ("The contract provision ... because it uses the imperative 'shall,' is most reasonably interpreted to mandate venue. . . .").  Moreover, plaintiff's TCPA claim falls within the scope of the forum selection provision.  As noted, Shine would defend the claim by arguing that it had prior express consent arising from plaintiff's establishment of a Shine Text account, plaintiff's use of the Shine website, and the Terms of Service and Privacy Policy which plaintiff accepted.  Plaintiff's TCPA claim therefore fits within the forum selection clause's definition of "any dispute arising under these Conditions." Plaintiff cannot avoid this result by asserting statutory claims under the TCPA, as the plain intent here is that any claims regarding plaintiff's relationship with Shine would be litigated in Shine's home state of New York.  *See, e.g.,  Blue Ocean Corals, LLC v. Phoenix Kiosk, Inc.*, No. 14-CIV-61550, 2014

-18-

WL 4681006, at *8 (S.D. Fla. Sept. 19, 2014) ("Courts have construed broad 'arising out of' language in forum-selection clauses, such as the language here, to encompass contract, tort and statutory claims arising directly or indirectly from the business relationship evidenced by the contract.").

The Eleventh Circuit reached a similar conclusion in *Slater v. Energy Services Group International Inc.*, 634 F.3d 1326 (11th Cir. 2011). There, the plaintiff filed an action against her employer under Title VII, the Florida Civil Rights Act, and Florida Whistleblower Act. The forum selection clause in her employment agreement required the plaintiff bring "all claims or causes of action relating to or arising from this Agreement . . . in a court in the City of Richmond, Virginia." *Id.* at 1328–29. Plaintiff argued that the forum selection clause applied narrowly and only to breach-of-contract claims concerning "this Agreement," thereby excluding her statutory claims for civil rights and whistleblower violations. *Id.* at 1330. The Eleventh Circuit disagreed, finding that the parties intended the employment contract to govern the entirety of their relationship and thus, the statutory-based claims fell within the scope of the broadly worded forum selection clause. *Id.* at 1331. As the precedent of *Slater* makes clear, such forum selection clauses apply broadly where, as here, the claim arises out of the parties' preexisting relationship. The clause here is broad enough to include plaintiff's TCPA claim.

### C.     There Are No Exceptional Circumstances Here To Justify Disregarding The Forum Selection Clause.

The Supreme Court has instructed that "district court[s] should ordinarily transfer the case to the forum specified in [a forum-selection] clause," and only in "extraordinary

circumstances" should a motion to transfer such as this one be denied.  *Atl. Marine,* 134 S. Ct. at 581.  No such extraordinary circumstances exist here.

There is nothing to suggest that "trial in the contractual forum will be so gravely difficult and inconvenient that" plaintiff will be deprived of his day in court.  *M/S Bremen*, 407 U.S. at 18.  The Eleventh Circuit has held that "[t]he financial difficulty that a party might have in litigating in the selected forum is not a sufficient ground by itself for refusal to enforce a valid forum selection clause." *P&S Bus. Machs., Inc. v. Canon USA, Inc*., 331 F.3d 804, 807 (11th Cir. 2003).  Moreover, the parties knew of the "forum selection clause, and as a result the parties should have anticipated the potential for inconvenience at the time the Contract was executed."  *Woods v. Christensen Shipyards, Ltd*., No. 04-61432-CIV-ZLOCH, 2005 WL 5654643, at *9 (S.D. Fla. Sept. 23, 2005).  This is, of course, a putative class action that is not limited to Florida residents.  Indeed, class counsel is not even located in Florida, and practices from an office in Colorado.  This factor does not render the forum-selection clause unenforceable.

Nor would the contractual choice of forum deprive plaintiff of any remedy under state law because this is a federal question case under the TCPA.  Because the Eastern District of New York will apply federal law to plaintiff's claims under the TCPA, there is no uniquely local interest in this controversy sufficient to override the forum-selection clause.  *See Atl. Marine*, 134 S.Ct. 579, 580, 582.  As such, plaintiff cannot meet his heavy burden to demonstrate that the parties' bargained-for forum-selection clause should not be enforced.

**D.      Alternatively, The Action Should Be Dismissed Or Transferred to the Eastern District of New York On *Forum Non Conveniens* Grounds.**

If this Court does not transfer the action based on the parties' contractual choice of forum, it should be dismissed in favor of a New York forum on *forum non conveniens* grounds.  "Under the doctrine of *forum non conveniens*, a district court has the inherent power to decline to exercise jurisdiction even where venue is proper."  *J.C. Renfroe & Sons, Inc. v. Renfroe Japan Co.*, 515 F. Supp. 2d 1258, 1265 (M.D. Fla. 2007).  An action should be transferred on *forum non conveniens* grounds "when it appears that the convenience of the parties and the interests of justice weigh in favor of trying the action in an alternative forum."  *Id.*  To determine whether "the convenience of the parties and the interests of justice" favor an alternative forum, a court must apply a balancing test of public and private factors.  *Id.*

Private factors the district court should consider "include the relative ease of access to sources of proof, access to unwilling and willing witnesses, ability to compel testimony, the possibility of view of premises, and the enforceability of a judgment.  *Wilson v. Island Seas Investments, Ltd.*, 590 F.3d 1264, 1270 (11th Cir. 2009).  The public interest factors to be considered include the administrative difficulties flowing from court congestion, the local interest in having localized controversies decided at home, and the benefits associated with having a local court decide issues of state law in diversity cases.  *See Atlantic Marine Construction Co. v. United States District Court*, ___ U.S. ___, 134 S. Ct. 568, 581-82 (2013).

Here, minimal deference should be given to Plaintiff's choice of forum.  Plaintiff purports to represent a nationwide class.  But, as noted above, the alleged misconduct has no

connection to the State of Florida.  Application of the private and public factors also weigh in favor of dismissal.  Shine's principal place of business is located in New York. (Lidey Decl., ¶ 3.)  As such, many of Shine's potentially relevant witnesses and potentially relevant documents will likely also be located in New York.  With respect to the public interest factors (i) there is no evidence that dockets in the Eastern District of New York are more congested than those of courts sitting in the Middle District of Florida, (ii) this case does not present a "localized controversy," and (iii) federal law, rather than Florida state law, will apply to the claims raised.  There is no good reason for the case to be in Florida, but there are good reasons that it should be in New York.

## <u>RULE 3.01(G) CERTIFICATION</u>

The undersigned counsel for defendant Shine, Inc. certifies that prior to filing this motion he conferred with plaintiff's counsel regarding the relief sought herein.  Plaintiff's counsel objected to the relief sought, which necessitated the filing of this motion with the Court.

WHEREFORE, Defendant Shine, Inc. respectfully requests that the Court enter an order dismissing the Complaint as against it and compelling plaintiff to individually arbitrate his claim.  I(f the Court denies this relief, Shine respectfully requests that the Court transfer venue of this case to the Eastern District of New York.

 */s/ Mark J. Bernet*_____
Mark J. Bernet
Florida Bar no. 606359
**AKERMAN LLP**
401 E. Jackson Street, Suite 1700
Tampa, Florida 33602
Tel: (813) 223-7333
Fax: (813)-218-5422
mark.bernet@akerman.com
judy.barton@akerman.com

-and-

Gavin J. Rooney, Esq.
Naomi D. Barrowclough, Esq.
**LOWENSTEIN SANDLER LLP**
One Lowenstein Drive
Roseland, New Jersey 07068
Tel:  (973) 597-6220
Fax:  (973) 597-6221
grooney@lowenstein.com
nbarrowclough@lowenstein.com
*Attorneys for Defendant Shine, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on October 20, 2017, the foregoing document was served upon all counsel of record via ECF.

 */s/ Mark J. Bernet*_____
Attorney

-23-